124 So.2d 883 (1960)
Martha QUINN, widow of Charley H. Quinn, deceased, and Cora Gadson and Leila Refour, heirs of Charley H. Quinn, deceased, Appellants,
v.
Rosena MILES, Appellee.
No. C-49.
District Court of Appeal of Florida. First District.
November 29, 1960.
Rehearing Denied December 28, 1960.
*884 Cecil G. Costin, Jr., Port St. Joe, for appellants.
Benjamin H. Dickens, Port St. Joe, for appellee.
WIGGINTON, Chief Judge.
Appellants have appealed from an adverse final decree entered in an action for declaratory relief brought by them against appellee. By their suit appellants allege that the plaintiff, Martha Quinn, was the lawful widow of Charley H. Quinn, who at the time of his death on March 4, 1958, owned a parcel of real estate in Gulf County which he occupied as his home. It is further alleged that the plaintiffs, Cora Gadson and Leila Refour, are the lawful children and heirs at law of their father, Charley Quinn. It is prayed that the alleged relationship of the plaintiffs to the decedent be declared by the court and that Martha Quinn be decreed to own a life estate in the home with remainder in fee simple vested in her daughters, the coplaintiffs. It is alleged that the defendant, Rosena Miles, occupies the property in question and asserts some claim of ownership thereto as the surviving widow of Charley H. Quinn by virtue of a purported marriage between her and the decedent prior to his death.
In her answer to the complaint appellee alleged that she was the lawful wife of Quinn by virtue of her marriage to him in 1957. In addition she interposed the affirmative defense of equitable estoppel. Evidence in support of this defense was adduced at the trial.
Upon consideration of the proofs adduced at the hearing before the court, the chancellor decreed that the property in question was the homestead of Charley H. Quinn at the time of his death; that appellee, Rosena Miles, is the lawful widow of the decedent and owns a life estate in the home; that the plaintiffs, Leila Refour and Cora Gadson, are the lawful children and lineal descendants of the decedent and own a vested remainder in the home involved in the cause. It is further decreed that plaintiff was not estopped to maintain this action, but since this ruling has not been assigned as error on appeal, its correctness will be presumed without further consideration.
Appellants contend that the chancellor either disregarded the uncontradicted evidence touching upon the crucial issue in the case, or applied to the evidence an incorrect principle of law in reaching the conclusion that appellee, Rosena Miles, is the lawful widow of the decedent. Although the record reflects sharp conflicts in the evidence relating to issues immaterial to our determination of this appeal, it is equally clear that on the question presented to us for decision the evidence is not in material dispute.
The record reveals that appellant, Martha Quinn, married the decedent on February 4, 1905. There was born of this marriage five children, all but two of whom died either at childbirth or in infancy. The two surviving children of the marriage are the plaintiffs, Leila Refour and Cora Gadson. The marriage relation between the parties was disrupted in 1913 when the decedent *885 severely beat Martha with a cow bell at a time when she was pregnant. As a result of this beating Martha suffered bodily injuries which resulted in the death of the child she was then carrying, and inflicted such serious wounds upon her body that the scars were still visible at the time testimony was taken in this case. Because of the decedent's actions toward Martha, she left his home and took up residence in the home of her parents. In 1914 the deceased instituted a suit for divorce against Martha, but she testified that she refused to consent to the divorce and employed an attorney to represent her. The court records reflect that this case proceeded no further than the entry of a decree pro confesso against Martha and was never completed by the entry of a final decree.
On June 17, 1916, the decedent married one Lizzie Quinn from whom he separated and against whom he instituted divorce proceedings in 1920. Like his first attempt at freeing himself from an unwanted wife, the court records reveal that this suit also proceeded to the entry of a decree pro confesso against the wife, but was never completed by the entry of a final decree. This factor seems immaterial, however, for the reason that the decedent remarried Lizzie within a few months after the suit for divorce was instituted, and continued living with her as husband and wife until Lizzie's death in 1950. It was during the existence of this purported matrimonial relationship that the decedent acquired the home in which he was living at the time of his death. Following Lizzie's death the decedent commenced living with appellee, Rosena Miles, in 1956, which after a period of about one year culminated in a marriage of the parties on February 14, 1957. Rosena lived with decedent in his home until his death on March 4, 1958.
The evidence reveals without substantial dispute that the decedent lived and worked in Calhoun and Gulf Counties during the entire period of his life. Martha testified that she had never instituted a suit for divorce against the decedent, and with the exception of the decedent's attempt to divorce her in 1914, she had no knowledge of any suit for divorce having been instituted by the decedent against her. To like effect was the testimony of her daughters, the coplaintiffs. As stated above the proceedings for divorce brought by decedent against Martha in 1914 were never completed and no final decree of divorce was entered. After the decedent had been married to his second alleged wife Lizzie for a period of several years, Martha entered into a marriage relationship with one Charlie Marshall with whom she lived and by whom she bore several children. It was while living with Marshall that Martha left West Florida and moved to South Florida, where Marshall worked in various turpentine camps over a period of several years. After Marshall's death, Martha returned to Calhoun and Gulf Counties, where she continued to reside until the filing of this action.
The Clerk of the Circuit Court of Calhoun County testified that he had made a careful search of the records of his office, but found no record of any divorce decree having been entered in a suit between Martha and the decedent. The Clerk of the Circuit Court of Gulf County testified that he likewise had made a careful search of the records of his office and failed to find any record of a divorce decree having been entered in any suit between Martha and the decedent. There was introduced in evidence interrogatories propounded to the Director of the Florida Bureau of Vital Statistics which reveal that the records of that office fail to disclose any record of a divorce having been secured by the parties. It is upon the foregoing evidence that appellant contends the trial court erred in finding that appellee, Rosena Miles, was the lawful wife of the decedent at the time of his death.
It is well settled in this state that the presumption of validity which exists in favor of a last marriage is one of the strongest known to the law, and the burden *886 of rebutting this presumption rests upon the party attacking such marriage. Since the record in this case is devoid of any competent substantial evidence affirmatively showing that decedent divorced his first wife Martha before marrying his last wife Rosena, the chancellor must have necessarily relied upon this presumption in finding that decedent's last marriage with Rosena was valid. He likewise must necessarily have concluded that the foregoing evidence hereinabove recited was insufficient to rebut the presumption of validity respecting the last marriage.
It has been properly held that in attacking the validity of a subsequent marriage by her husband, the first wife is not required to eliminate every remote possibility that her husband may have secured a divorce from her prior to his last marriage. Certainly she should not be held to a degree of proof which would force her to negative every such possibility through the doubtful though oft repeated theory that anything is possible.[1]
The principle is recognized in this state that the wife attacking a later marriage is not required to go into every county of every state in which her husband may have lived subsequent to his separation from her and secure certificates showing that a search of the records in those counties fails to reveal that her husband ever secured a divorce from her. If the first wife can show by competent evidence that the public records of the counties in which her husband actually lived subsequent to their separation fail to reveal the entry of a decree of divorce by him against her, and that he had no grounds on which to seek a divorce in the first instance, the presumption in favor of the validity of a subsequent marriage will be overcome.[2] It has been repeatedly held that if the records of the State Bureau of Vital Statistics fail to disclose any divorce by the decedent against his wife during the period of their separation, such evidence will be sufficient proof that no such divorce was ever procured, and likewise sufficient to rebut the presumption of validity attaching to the subsequent marriage of decedent.[3]
Closest in point of fact to the case now under consideration by this court is that of Perkins v. Richards Constructors Inc., decided by the Second District Court of Appeal.[4] In that case the deceased husband enjoyed successive marriage relationships with three different women. After his separation from his first wife she likewise remarried. The first wife offered proof consisting of a certificate issued by the Florida Bureau of Vital Statistics which disclosed that no divorce had ever been procured by her deceased husband against her in this state. She likewise proved by the records of the several counties of Mississippi in which the decedent had formerly lived that there existed no record of any divorce by her husband against her. She testified that she had never divorced her husband nor did she have any knowledge of any divorce proceeding having been brought by him against her during his lifetime. Upon this evidence the court held that the presumption of validity which attached to decedent's last marriage had been successfully rebutted, and that the first wife was the lawful wife of the decedent at the time of his death.
When tested in the light of the applicable principles of law as hereinabove recited the evidence revealed by this record clearly rebuts the presumption of validity which attaches to decedent's last marriage with appellee, Rosena Miles. We *887 therefore hold that the chancellor erred in decreeing that appellee was the lawful wife of Charley H. Quinn at the time of his death and entitled to a life estate in the property of which he died seized. The decree is accordingly reversed and remanded with directions that the mentioned portion of the decree be amended to conform to the conclusion herein set forth. That portion of the decree finding appellants, Cora Gadson and Leila Refour, to be the lawful heirs of decedent, Charley H. Quinn, is affirmed.
Affirmed in part and reversed in part.
STURGIS and CARROLL, DONALD, JJ., concur.
NOTES
[1] Teel v. Nolan Brown Motors, Fla. 1957, 93 So.2d 874, Johnson v. Johnson, Fla. 1951, 51 So.2d 421.
[2] Roberts v. Roberts, 124 Fla. 116, 167 So. 808.
[3] King v. Keller, Fla. 1960, 117 So.2d 726: Hillyer & Lovan v. Florida Industrial Commission, 155 Fla. 144, 19 So.2d 838; Teel v. Nolan Brown Motors, see note 1.
[4] Perkins v. Richards Constructors, Inc., Fla.App. 1959, 111 So.2d 494.