Burke, J.
 

 This appeal poses the question of whether respondent Louise Lieber and decedent Amandus Watts entered into a common-law marriage in the State of Florida.
 

 Amandus Watts (decedent) died on June 14,1966. Respondent Louise Lieber (respondent) applied for letters of administration of decedent’s estate asserting that
 
 “
 
 she is the common law wife and/or a creditor and/or a person entitled to the residuary estate ”. Decedent’s distributees and the executor of decedent’s will (appellants) filed answers denying that respondent was decedent’s common-law wife or a person entitled to the residuary estate. The Appellate Division, Third Department, reversed on the law and the fact
 
 a
 
 decree of the Surrogate’s
 
 *494
 
 Court, Hamilton County, which determined that no marriage was entered into between decedent and respondent, that the petition of respondent for letters of administration be dismissed,
 
 [1]
 
 and that objections of respondent to the petition of the executor seeking probate of a writing purporting to be decedent’s will be dismissed. Pursuant to CPLR 5601 (subd. Id]), appellants appeal from a decree entered after the Appellate Division order and bring up for review the Appellate Division order. (See
 
 Matter of Farber
 
 v.
 
 U. S. Trucking
 
 Corp., 26 N Y 2d 44, 55.)
 

 We conclude that the order of the Appellate Division should be reversed and the original decree of the Surrogate’s Court be reinstated.
 

 In support of the common-law marriage, respondent introduced evidence that decedent and respondent lived together during the winter months of 1964, 1965 and 1966; that respondent wore a wedding ring; that respondent was very attentive to decedent’s needs and performed such services as cooking) cleaning, nursing and assisted in dressing him; that occasionally they were introduced as Mr. and Mrs. Watts at social gatherings, and that occasionally decedent introduced respondent as his wife. The bulk of this evidence related to the period 1964-1966 although prior to these years, respondent adduced testimony that decedent and respondent cohabited and, on occasion, decedent would introduce respondent as his wife.
 

 In opposition to respondent’s claim, appellants established that during the period 1955-1958, respondent filed tax returns under her own name, Louise Lieber, and that decedent filed tax. returns in 1960-1965 without claiming respondent as his wife and in a 1959 return, decedent reported respondent as his employee. It was also established that respondent voted under the name of Louise Lieber in New York and in 1958, respondent was admitted in a New York hospital under the name of Louise Lieber and listed her occupation as “housekeeper”. Appellants also demonstrated that respondent wrote decedent a letter in 1964 which in relevant part stated
 
 " If I
 
 were a wife I couldn’t do more for you and you know it ” and that in July
 
 *495
 
 of 1967, respondent made a damaging admission to the effect that if it weren’t for the appellant-executor, decedent and respondent would have been married. Appellants additionally proved that when the funeral arrangements were being made, respondent was listed as Mr. Watts’ housekeeper on the requisite forms. Furthermore, respondent filed a claim for services rendered to the decedent as housekeeper for the period 1955 to 1966, a stance, it is to be noted, that is at odds with her claim as decedent’s common-law wife.
 

 At the outset it should be said that whether decedent and respondent entered into a valid common-law marriage is to be determined according to the law of Florida and if the record at the Surrogate’s Court sustains a finding of a common-law marriage, such marriage will be recognized as valid in New York
 
 (Matter of Farber
 
 v.
 
 U. S. Trucking Corp.,
 
 26 N Y 2d 44, 47,
 
 supra; Shea
 
 v.
 
 Shea,
 
 294 N. Y. 909;
 
 Fidanque
 
 v.
 
 Fidanque,
 
 276 App. Div. 543, 544).
 

 According to Florida law, the burden of establishing a prima facie case of common-law marriage is on the one asserting the matrimonial relationship
 
 (Matter of Alcala,
 
 188 So. 2d 903 [Fla.];
 
 Matter of Beacher,
 
 177 So. 2d 838 [Fla.] ;
 
 Lambrose
 
 v.
 
 Topham,
 
 55 So. 2d 557 [Fla.]), and in establishing the priina facie case, the best evidence is the testimony of the contracting parties or of those present that there was an agreement,
 
 per verba de praesenti (Van Derven
 
 v.
 
 Van Derven,
 
 105 So. 2d 805 [Fla.];
 
 Le Blanc
 
 v.
 
 Yawn,
 
 99 Fla. 328). While such testimony is the best evidence, it is not the only way to prove a common-law marriage. Thus, when a common-law marriage cannot be so proven, ‘ ‘ proof of general repute and cohabitation as man and wife will support a presumption of marriage ”
 
 (Le Blanc
 
 v.
 
 Yawn,
 
 99 Fla. 328, 330,
 
 supra).
 
 Once a prima facie case is established, the burden then shifts to the party asserting its illegality to rebut the presumption of marriage and a common way of rebutting the presumption is to show that the relationship was meretricious in its inception
 
 (Matter of Alcala,
 
 188 So. 2d 903, 908 [Fla.],
 
 supra).
 
 Thus, a party asserting the existence of a common-law marriage must not only establish a prima facie case, but also must overcome, if the relationship is shown to be meretricious in its inception, the presumption that the meretricious character of the relationship has continued
 
 (Marshall
 
 
 *496
 
 v.
 
 Sarar,
 
 118 So. 2d 258;
 
 Van Derven
 
 v.
 
 Van Derven,
 
 105 So. 2d 805, 806 [Fla.],
 
 supra; McClish
 
 v.
 
 Rankin,
 
 153 Fla. 324, 329; see 15 N Y Jur., Domestic Relations, § 80, p. 328). In other words, when the best evidence is not available, and a relationship is shown to be meretricious, the party asserting the common-law marriage must establish a prima facie case by general repute and cohabitation as well as demonstrate that the relationship was not meretricious by acts and circumstances indicating the relationship had taken on a matrimonial character (cf.
 
 Edge
 
 v.
 
 Rynearson,
 
 107 Fla. 461).
 

 Guided by these considerations, we conclude that a common-law marriage was not established.
 

 An examination of the very cases relied upon by respondent,
 
 Matter of Alcala
 
 (188 So. 2d 903 [Fla.], supra) and
 
 Matter of Beacher
 
 (177 So. 2d 838 [Fla.], supra) demonstrates that a prima facie case was not established. In
 
 Alcala
 
 and
 
 Beacher,
 
 not only was there strong uncontradicted evidence of cohabitation and general repute, but also there was overwhelming documentary. evidence supporting the presumption of a common-law marriage. Tax returns, deeds, insurance policies, bank accounts and funeral documents all pointed to a matrimonial relationship. No such documents proving such a relationship were, produced in the case at bar. In point of fact, viewed in the totality of the record, the documentary evidence in the instant case — funeral forms, correspondence, tax returns, voter registration, hospital records and a wage agreement which decedent requested be drawn up fixing respondent’s salary at $150 a month and which a witness testified as to being drafted though not signed by the decedent — refutes the claim of respondent that she was decedent’s common-law wife.
 
 Shea
 
 v.
 
 Shea
 
 (268 App. Div. 677, revd. 294 N. Y. 909,
 
 supra
 
 [on dis. opn.]) does not preclude such a conclusion. It was merely held in
 
 Shea
 
 that the fact that the parties may have acted inconsistently must be weighed together with all the evidence in determining whether a common-law marriage existed (cf.
 
 Dodge
 
 v.
 
 Campbell,
 
 255 N. Y. 622).
 

 In the recent case of
 
 Barretti
 
 v.
 
 Twomey
 
 (237 So. 2d 289 [Fla.]), the situation somewhat paralleled the case at bar. In
 
 Barretti,
 
 there was no evidence of an express agreement to marry
 
 per verba de praesenti,
 
 nor was there sufficient evidence
 
 *497
 
 from which such an agreement could be inferred (although evidence of cohabitation and the fact that the couple was introduced as husband and wife in social circles was entered in the record). The District Court of Appeal of Florida held that the documentary evidence consisting of a hospital application and a deed, both indicating that the man was single, refuted the putative wife’s claim. In the instant case, the documentary evidence is much stronger in refuting respondent’s claim of a common-law marriage.
 

 Even if we were to consider the evidence adduced by respondent as establishing a prima facie case of common-law marriage, respondent has not overcome the presumption of a continuing meretricious relationship
 
 (Marshall
 
 v.
 
 Sarar,
 
 118 So. 2d 258 [Fla.]
 
 supra; Van Derven
 
 v.
 
 Van Derven,
 
 105 So. 2d 805 [Fla.],
 
 supra).
 
 Although alleging in her bill of particulars that the marriage commenced in 1955, respondent argued that the marriage “ solidified” during the period 1964-1966. More telling is the correspondence mailed on February 21,1964 from respondent to executor-appellant stating that decedent “ wanted to marry me
 
 * * *
 
 he didn’t want to live in sin.” A fair inference is that the relationship was meretricious in its inception and such inference is bolstered by the record developed in the Surrogate’s Court. Against this, respondent presented little cogent evidence to overcome the presumption of a continuing meretricious relationship. Furthermore, the evidence introduced by appellants, as outlined above, for example, correspondence, tax returns and admissions by the respondent, tended to show that no common-law marriage was consummated.
 

 Accordingly, the final decree appealed from should be reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and the original decree of the Surrogate’s Court reinstated.
 

 Chief Judge Fuld and Judges Jasen, Gabrielli, Jones and Wachtler
 
 concur;
 
 Judge Breitel taking no part.
 

 Decree reversed, etc.
 

 [1]
 

 . The dismissal of respondent’s petition for letters of administration was without prejudice to any claim she may have against the estate for any services allegedly rendered to the decedent.